**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**

**PHILLIP MARTINEZ-NOLAN**                                                                           **PLAINTIFF**

**V.**                                           **CASE NO. 5:20-CV-5082**

**TYSON POULTRY, INC.**                                                                           **DEFENDANT**

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Phillip Martinez-Nolan brings this action against Defendant Tyson Poultry, Inc. ("Tyson") pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*; the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*; and the Arkansas Civil Rights Act ("ACRA"), Arkansas Code §16-123-101, *et seq.*  Presently before the Court are Tyson's Motion for Judgment on the Pleadings (Doc. 17) and Motion for Leave to Supplement Response (Doc. 28).  Having considered the pleadings, the parties' arguments, and the relevant legal authority, Tyson's Motion for Judgment on the Pleadings (Doc. 17) is **GRANTED IN PART** and **DENIED IN PART.**  The Motion for Leave to Supplement Response (Doc. 28) is **DENIED**.

## I.   FACTUAL BACKGROUND

In ruling on the pending motion, the following facts are taken from Plaintiff's Amended Complaint (Doc. 16) and are assumed to be true.  Plaintiff was employed by Tyson as a maintenance generalist at Tyson's chicken processing facility, commonly referred to as "Chick'n Quick" in Rogers, Arkansas.  He worked at that facility from August 9, 2018, until he resigned on October 24, 2019, due to the alleged workplace harassment he experienced (Doc. 16, ¶¶ 8–13).  Plaintiff worked the "D Shift," which is also known as

1

the "graveyard shift." *Id*. at ¶¶ 20–21.  Plaintiff alleges that he is a Messianic Jew and is disabled due to his diabetes.  *Id*. at ¶¶ 26, 45.

Plaintiff describes several incidents of workplace discrimination and harassment. He alleges that on January 4, 2019, coworker Brandon Grimmit told him that "Hitler did a good thing when he killed all the people he did in Germany" and that "Hitler was very smart." *Id*. at ¶¶ 47–49.  He also alleges that two other maintenance coworkers on the D-shift—referred to only as "Raphael" and "Ryan"—propositioned him for oral sex over a factory-wide radio network. *Id*. at ¶¶ 75–78.  In July 2019, Plaintiff complained about this conduct to his supervisor, Jacob Coffelt, whose response was to ask Plaintiff and Raphael if they wanted to hug and kiss. *Id.* at ¶¶ 79–82.

In September 2019, Plaintiff sustained a non-work-related injury for which he sought and received FMLA leave time. *Id.* at ¶ 90.  Despite Plaintiff's physician's order for light-duty work upon his return (which restricted his activity from pulling, pushing, or lifting anything over twenty-five pounds), Plaintiff's direct supervisor, Mr. Coffelt, ordered Plaintiff to perform more intense manual labor jobs.  This included moving a drum weighing approximately 500 pounds. *Id*. at ¶¶ 95–96.  Plaintiff was also subjected to mockery by management and coworkers for his injury and his diabetes. *Id*. at ¶ 105.

Plaintiff's other supervisor, Jodie Ackerman, prohibited Plaintiff from checking his blood sugar during work hours because it was "gross" and constituted "theft of company time." *Id.* at ¶ 31.  Even after intervention from the shift nurse, Plaintiff asserts that he was consistently denied permission to check his blood sugar levels. *Id.* at ¶¶ 33–35.

Following Plaintiff's resignation on October 24, 2019, he filed an unsigned letter with the Equal Employment Opportunity Commission ("EEOC") on November 6, 2019.[1] *Id.* at ¶¶ 14–15.   In the letter, Plaintiff describes instances of discrimination based upon his sex, religion, and disability, as well as a claim for FMLA discrimination.   (Doc. 19-1, pp. 3–5).  Following an EEOC investigation, a Form 5 charge was completed by an EEOC investigator and filed January 10, 2020.  *Id.* at p. 2.  This official charging document was signed and verified by Plaintiff, and only the boxes for "disability" and "retaliation" are checked.  *Id.*  A right to sue letter was issued on January 15, 2020.  (Doc. 16, ¶ 19).

Plaintiff originally filed his action in the Circuit Court of Benton County, Arkansas, but Tyson removed it to this Court.  At the Rule 16 Case Management Hearing, the Court directed Plaintiff to amend his claims for clarity's sake, so Plaintiff filed his Amended Complaint (Doc. 16).  Although the Amended Complaint remains somewhat unclear, it appears to allege claims for: (1) discrimination, hostile work environment, and failure to accommodate under the ADA; (2) religious discrimination and hostile work environment under Title VII; (3) sexual discrimination and hostile work environment under Title VII; (4)

---

[1]  Plaintiff attached his letter to the EEOC and right to sue letter to his original complaint and incorporated those documents by reference into his Amended Complaint.  *See* Fed. R. Civ. P. 10(c) ("A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading . . . .").  He did not, however, attach or explicitly incorporate his official Form 5 EEOC charge; instead, Tyson filed it as an attachment to its Motion for Judgment on the Pleadings.  *See* Doc. 17, p. 4.  Typically, "'matters outside the pleading' may not be considered in deciding a Rule 12 motion to dismiss," but an exception exists for "documents 'necessarily embraced by the complaint.'"  *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004).  Here, the Amended Complaint refers specifically to "the EEOC complaint," which the Court understands as a reference to the official Form 5 charge.  Therefore, the Court will consider the Form 5 charge, as it is necessarily embraced by the complaint.

interference and discrimination under the FMLA; and (5) discrimination on the basis of race, religion, national identity, or disability under the ACRA.  *See* Doc. 16.

Tyson then filed its Motion for Judgment on the Pleadings on all of Plaintiff's claims.  (Doc. 17).  After the Motion for Judgment on the Pleadings was fully briefed, Plaintiff filed his Motion for Leave to Supplement Response (Doc. 28) seeking leave to amend his pleadings in order to attach paperwork that purportedly shows that he gave Tyson notice of his need for FMLA leave.

## II.  MOTION FOR LEAVE TO SUPPLEMENT RESPONSE

The Court first addresses Plaintiff's Motion for Leave to Supplement Response (Doc. 28).  In it, Plaintiff argues that the Court should "consider the FMLA paperwork to determine whether Tyson was fairly notified that Plaintiff needed light-duty and physical therapy." (Doc. 28, p. 1).  The "FMLA paperwork" in question has been filed on the docket as two documents (Docs. 29 & 30).  In the first document, Plaintiff's health care provider notes that Plaintiff must attend one hour of physical therapy two to three times a week for six weeks (Doc. 29, p. 4).  The health care provider signed this document on September 26, 2019.  The second document is similar, and it contains a recommendation from Plaintiff's health care provider that Plaintiff attend physical therapy and be given light-duty work.  *Id.* at p. 4.  This recommendation was signed on October 16, 2019.

Tyson argues that the Court should deny Plaintiff's Motion for Leave to Supplement Response and should not consider the two documents when considering the pending Motion for Judgment on the Pleadings.  Tyson argues that the Rules of Civil Procedure do not permit Plaintiff to supplement his pleadings with evidence once the sufficiency of those pleadings have been attacked.  As a backup, Tyson also asserts that the

documents do not bolster Plaintiff's pleadings because they do not show that Tyson was on notice of Plaintiff's need for FMLA leave, so the Court's consideration of these documents is futile.

For various reasons, the Court agrees with Tyson and **DENIES** Plaintiff's Motion for Leave to Supplement Response (Doc. 28).  First, given that this Motion was filed after the Motion for Judgment on the Pleadings was ripe, and the purpose of the Motion appears to be to strengthen the allegations made in the Amended Complaint, the Court construes this Motion as one for leave to amend the Amended Complaint.  But the Court's Case Management Order set the deadline to amend the pleadings as September 27, 2020, *see* Doc. 12, p. 2, and Plaintiff's Motion was filed on October 9, 2020.  "'If a party files for leave to amend outside of the court's scheduling order, the party must show cause to modify the schedule.'"  *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008) (quoting *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008)).  "Rule 16(b)'s good-cause standard governs when a party seeks leave to amend a pleading outside of the time period established by a scheduling order, not the more liberal standard of Rule 15(a)."  *Id.* (citing *Popoalii*, 512 F.3d at 497).  Plaintiff argues that he did not attach the documents to his timely filed Amended Complaint because he misunderstood the Protective Order and did not believe that he could file documents marked "Confidential" on the record.

Plaintiff's misunderstanding of the Protective Order—the terms of which were agreed upon by the parties—does not qualify as good cause to justify an untimely amendment of his pleadings.  The Protective Order contains the following language:

> Any confidential material disclosed in any pleading, motion, deposition, transcript, brief, exhibit or other filing with the Court shall be maintained

under seal.  To the extent such confidential filing is capable of redaction; the redacted version of the document is to be filed on the public docket, with the unredacted version delivered in hard copy to the Clerk's Office for filing under seal.

. . .

If the parties are unable to reach an agreement as to redactions, the party wishing to filing the Confidential Information will file the complete document under seal.

(Doc. 9, pp. 3–4).  This unambiguous language allows the parties to file any document under seal if that document has been designated as "Confidential Information," even if there is disagreement regarding redactions.  And there is no question that these documents have been in Plaintiff's possession from the inception of the case. Thus, because Plaintiff could have timely filed these documents as sealed attachments to his Amended Complaint, Plaintiff's explanation does not create good cause to amend his pleadings outside of the time set forth in the Case Management Order.

Second and finally, even if the Court were to grant Plaintiff leave to amend his pleadings, the requested pleading would be futile.  The documents Plaintiff wishes to attach to his pleadings show that Plaintiff's health care providers recommended physical therapy and light-duty work.  The documents do not show that Tyson was aware of these recommendations, which is the element that Tyson argues Plaintiff has failed to plead sufficiently.  Accordingly, any amendment with these documents would be futile.[2]

---

[2] Notwithstanding this finding, the Court explains in Section III.B.3 below why Plaintiff's FMLA claims should not be dismissed on the pleadings.

### III. MOTION FOR JUDGMENT ON THE PLEADINGS

#### A. Standard of Review

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings" pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  The standard of review for a motion for judgment on the pleadings is almost identical to the standard used in evaluating a Rule 12(b)(6) motion to dismiss.  *Clemmons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009).   "Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law."  *Faibisch v. Univ. of Minn.,* 304 F.3d 797, 803 (8th Cir. 2002).

Thus, to survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).  "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

#### B. Discussion

Tyson argues that judgment on the pleadings is appropriate because:  (1) Plaintiff failed to exhaust his administrative remedies with respect to his claims for religious and sex discrimination under Title VII; (2) Plaintiff has failed to plead facts sufficient to establish claims for hostile work environment based upon disability, religion, or sex; (3)

Plaintiff has failed to plead facts sufficient to state claims for constructive discharge under the ADA or Title VII; and (4) Plaintiff has failed to plead facts sufficient to state claims for interference or discrimination under the FMLA.  Tyson asserts that, based upon the pleading deficiencies it has identified, all of Plaintiff's claims should be dismissed.  Plaintiff disagrees, arguing that he exhausted his administrative remedies and that the facts pleaded in his Amended Complaint are sufficient to put Tyson on notice of all of his claims.

For the reasons explained below, the Court concludes that Plaintiff has failed to exhaust his remedies with respect to his claims for religious and sex discrimination under Title VII.  The Court also concludes that Plaintiff has sufficiently alleged his claims under the ADA and the FMLA.  Finally, the Court concludes that Plaintiff has adequately pleaded his claims for disability and religious discrimination under the ACRA, but he has not adequately pleaded his claims for race and national origin discrimination under that same statute.

## 1.  Exhaustion of Title VII Claims

The Court first addresses Tyson's argument that Plaintiff failed to exhaust his remedies with respect to his religious and sex discrimination claims under Title VII.  Tyson's argument is simple:  Plaintiff only checked the boxes for "disability" and "retaliation" on his Form 5 charge, and the narrative section on the Form 5 charge makes no mention of religious or sex discrimination.  Thus, Tyson argues that Plaintiff did not exhaust his religious or sex discrimination claims.  Tyson also argues that the unverified letter Plaintiff initially sent to the EEOC—which does allege religious and sex-based discrimination—does not satisfy the exhaustion requirements of Title VII.  Plaintiff retorts that his initial letter satisfies the EEOC's requirements for a charge because it generally

describes the matters and parties the EEOC should investigate.  Thus, in Plaintiff's telling, the initial letter he sent was sufficient to instigate the EEOC's investigation and satisfy the relevant exhaustion requirements.

To assert a Title VII claim, Plaintiff must first exhaust his administrative remedies by filing a charge of discrimination with the EEOC within 180 days after the alleged unlawful employment practice occurred.   42 U.S.C § 2000e–5(e)(1); 29 U.S.C. § 626(d)(1)(B); *see Hutson v. Wells Dairy, Inc.*, 578 F.3d 823, 825–26 (8th Cir. 2009) (discussing Title VII and ADEA charge filing requirements).  Besides being timely, Section 706(b) of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5, requires "[c]harges" to "be in writing under oath or affirmation . . . contain[ing] such information and . . . in such form as the Commission requires." § 2000e-5(b).  Further, a complainant may amend their charges to cure technical defects, allege additional acts, or clarify allegations. 29 C.F.R. § 1601.12(b).

The issue here is that Plaintiff's initial letter to the EEOC cannot satisfy Title VII's exhaustion requirements because Plaintiff did not verify the initial letter, *i.e.*, he did not sign it under oath.  *See Shempert v. Harwick Chem. Corp.*, 151 F.3d 793, 797 (8th Cir. 1998) ("Charges under Title VII . . . must be verified."); 42 U.S.C. § 2000e–5(b) ("Charges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires."); 29 C.F.R. § 1601.9 ("A charge shall be in writing and signed and shall be verified.").  As explained by the Supreme Court, the verification requirement "protect[s] employers from the disruption and expense of responding to a claim unless a complainant is serious enough and sure enough to support it by oath subject to liability for perjury."  *Edelman v. Lynchburg Coll.*, 535 U.S. 106, 107 (2002).

Thus, it is plain that Plaintiff's initial letter, by itself, does not satisfy the verification requirements and cannot therefore exhaust a Title VII claim.

Contrary to Plaintiff's contentions, the Supreme Court's decision in *Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008), does not convince the Court that Plaintiff's initial letter qualifies as a charge sufficient to instigate an EEOC investigation. In *Holowecki*, the Supreme Court was asked to consider what constituted a formal charge to the EEOC.  In that case, which was brought under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq*., the plaintiff filed a form questionnaire and an accompanying signed affidavit seeking an EEOC investigation.  The Supreme Court held that these documents—considered together—constituted a proper charge under the ADEA and the EEOC's regulations for age discrimination charges. *Id.* at 406.  Nevertheless, *Holowecki* is clearly distinguishable from this action because Plaintiff's initial letter to the EEOC was unverified and therefore does not qualify as a formal charge, while in *Holowecki*, the plaintiff sent a signed affidavit along with the initial letter to the EEOC.

Still, there is a long line of cases holding that a Title VII plaintiff may, by subsequent verification, amend and cure a prior unverified charge. *See Edelman*, 535 U.S. at 118–19 (deferring to EEOC regulation allowing plaintiffs to later verify charges that were originally unverified).  And Plaintiff did subsequently file a verified Form 5 charge with the EEOC. *See* Doc. 17, p. 4.  However, Plaintiff's verified Form 5 charge only verified claims for disability and retaliation, omitting any claims for discrimination based upon religion or sex.  Thus, the Court must answer the following question:  If a Title VII complainant

asserts various unverified claims to the EEOC, and subsequently verifies only some of those claims, which claims are exhausted?

Other federal courts have discussed this issue, and the weight of the authorities suggests that a claim listed in an unverified letter or intake questionnaire is not exhausted where a subsequently filed, verified and timely charge does not include that claim.  In fact, the Fourth Circuit dealt with this exact issue upon remand from the Supreme Court in *Edelman*.  *See Edelman v. Lynchburg Coll.*, 300 F.3d 400 (4th Cir. 2002).  There, the plaintiff had sent an unverified letter to the EEOC alleging that his employer discriminated against him based upon his sex, national origin, and religion, *id.* at 402, and later signed and verified a Form 5 charge which only alleged discrimination on the basis of sex.  *Id.* at 405.  After the EEOC issued a right-to-sue letter, the plaintiff brought Title VII claims against his employer for discrimination based upon his sex, national origin, and religion. *See id.*  The Fourth Circuit held that the verified Form 5 charge—which omitted any reference to religious or ethnic discrimination—could not be held to have exhausted claims which were only raised in the unverified letter, stating that "[i]t would be unreasonable—as well as prejudicial to the [defendant]—to allow [the plaintiff's] sworn statement on the Form 5 charge, which does not mention religious or ethnic discrimination, to serve as a verification of those charges."  *Id.*

The Fourth Circuit doubled down on this logic in *Balas v. Huntington Ingalls Industries, Inc.*, 711 F.3d 401 (4th Cir. 2013), where it was asked to determine whether a plaintiff's intake questionnaire and letters could be read as part of a formal discrimination charge to the EEOC.  There, verification was not at issue; instead, the plaintiff made certain allegations in intake questionnaires and letters submitted to the EEOC prior to the

filing of her formal charge, but she did not make all of those allegations in her formal EEOC charge.  Thus, the question was whether she had exhausted those claims only made in her intake questionnaires and letters.  The Fourth Circuit answered that question in the negative, holding that only the official charge sent to the EEOC can exhaust administrative remedies, and that to consider other materials would "contravene[e] the purposes of Title VII."  *Id.* at 408.  Other circuit courts have reached similar conclusions.  *See Barzanty v. Verizon Pa., Inc.*, 361 F. App'x 411, 415 (3d Cir. 2012) ("A plaintiff cannot be allowed to transfer the allegations mentioned only in the questionnaire to the charge itself.  Not only would this be circumventing the role of the [EEOC], but it would be prejudicial to the employer."); *Green v. JP Morgan Chase Bank Nat'l Ass'n*, 501 F. App'x 727, 731 (10th Cir. 2012) (agreeing with *Barzanty* that "it would defeat the statutory scheme to find exhaustion where an employee includes a claim in the intake questionnaire, but then omits it in a timely subsequent formal charge that forms the basis for the administrative proceedings").  And district courts, including those in Arkansas, have found this rationale persuasive.  *See Wilkes v. Nucor Yamato Steel Co.*, 2015 WL 5725771, at *8 (E.D. Ark. Sept. 29, 2015) (holding that an unverified intake questionnaire did not rise to the level of a charge that could exhaust a claim); *Halsey v. United Parcel Serv., Inc.*, 2015 WL 73685, at *5 (D. Kan. Jan. 6, 2015) (same); *Williams v. Cnty. of Cook*, 696 F. Supp. 2d 1068, 1076 (N.D. Ill. 2013) (same).

The case presented by Plaintiff, *International Brotherhood of Electrical Workers, Local Union No. 5 v. U.S. E.E.O.C.*, 398 F.2d 248 (3d Cir. 1968), does not convince the Court otherwise.  There, the Third Circuit held that the filing date of an official EEOC charge should relate back to the filing date of a plaintiff's sworn letter to the EEOC, further

noting that "[t]here is no substantial difference in the contents of [the sworn narrative] and the 'formal charge' served upon the [defendant]." *Id.* at 252.  Thus, like *Holowecki*, *International Brotherhood* is distinguishable because in that case the initial letter to the EEOC was verified and otherwise met the requirements of a formal charge, unlike Plaintiff's initial unverified letter.

In short, Plaintiff only verified his disability and retaliation claims in his Form 5 charge to the EEOC.  Since he did not verify his religious and sex discrimination claims in his charge to the EEOC, he never brought formal charges for those claims to the EEOC and therefore he has not exhausted his remedies with respect to those claims. Accordingly, Plaintiff's claims for religious and sex discrimination under Title VII are **DISMISSED WITH PREJUDICE**.

### 2.  The ADA Claims

From Plaintiff's Amended Complaint, it appears that he alleges a claim for discrimination due to his disability, a hostile work environment, and failure to accommodate under the ADA.  For the following reasons, the Court concludes that Plaintiff has sufficiently alleged all of these claims.

#### i.   The Discrimination Claim

According to Plaintiff's Amended Complaint, he was constructively discharged due to his disability, diabetes.[3]  Tyson argues that the alleged harassment he received from his co-workers did not rise to the level necessary to establish constructive discharge.  For

---

[3] While Plaintiff's EEOC charge also references a sports-related injury and a request for light-duty work, his Amended Complaint brings disability claims based only upon his diabetes.

the reasons stated below, the Court finds that Plaintiff has sufficiently alleged his claim for disability discrimination under the ADA.

To state a prima facie claim for disability discrimination under the ADA, a plaintiff must plead plausibly: (1) that he is a disabled person within the meaning of the ADA; (2) that he was qualified to perform the essential functions of his position; and (3) that he suffered an adverse employment decision under circumstances that give rise to an inference of discrimination. *Taylor v. Sw. Bell Tel. Co.*, 251 F.3d 735, 739 (8th Cir. 2001). Tyson does not contest the first two elements, and after a review of the Amended Complaint, the Court finds that Plaintiff has sufficiently alleged that he was disabled by diabetes and that he was qualified to perform the essential functions of his position.

As to the third element, the Court finds that Plaintiff has sufficiently alleged that Tyson constructively discharged him from his employment.  Constructive discharge requires allegations that: (1) a reasonable person in the plaintiff's situation would find the working conditions intolerable; and (2) the employer intended for the plaintiff to quit or "could have reasonably foreseen that that the employee would quit as a result of its actions." *Brenneman v. Famous Dave's of Am., Inc.*, 507 F.3d 1139, 1144 (8th Cir. 2007) (alterations omitted).

Plaintiff alleges that his supervisors prohibited him from checking his blood sugar levels because it was "gross" and constituted a "theft of company time." (Doc. 16, ¶ 31). Further, Plaintiff alleges that Tyson's nurse repeatedly informed management of the medical necessity of the blood sugar checks.  *Id.* at ¶ 30.  Moreover, Plaintiff allegedly made several complaints to Tyson's human resources department, but Tyson allegedly continued to prohibit Plaintiff from checking his blood sugar levels.  *Id.* at ¶¶ 32–39.

14

Indeed, Plaintiff asserts that his supervisors told him that Tyson wanted him to quit.  *Id.*

at ¶ 12).  Therefore, taking the facts in the Amended Complaint as true, it is plausible that

Plaintiff could have found his working conditions intolerable and that Tyson could foresee

that denying Plaintiff the ability to check his blood sugar would cause him to discontinue

his employment.  Therefore, Plaintiff has sufficiently pleaded a claim for discrimination

based on disability under the ADA.

*ii.   The Hostile Work Environment Claim*

Tyson argues that Plaintiff has not sufficiently alleged a hostile work environment

based upon his disability because Plaintiff's allegations on this score are conclusory.  The

Court disagrees.  To allege a claim for hostile work environment based upon a disability,

Plaintiff

> must show that he is a member of the class of people protected [by the
> ADA], that he was subject to unwelcome harassment, that the harassment
> resulted from his membership in the protected class, and that the
> harassment was severe enough to affect the terms, conditions, or privileges
> of his employment.

*Shaver v. Ind. Stave Co.*, 350 F.3d 716, 720 (8th Cir. 2003) (citation omitted).  "When the

alleged harasser is the plaintiff's fellow employee there is a fifth element:  that the

employer knew or should have known of the harassment and failed to take proper action."

*Ryan v. Capital Contractors, Inc.*, 679 F.3d 772, 778 (8th Cir. 2012) (citation omitted).

This fifth element does not apply to allegations of supervisory harassment.

Plaintiff has satisfactorily pleaded the first three elements because he asserts that

he is disabled due to diabetes and that his co-workers and supervisor harassed him due

to his disability.  The fourth element is a closer question, but, taking the allegations in the

Amended Complaint as true, the Court concludes that the alleged harassment rose to the

required level to allege a hostile work environment claim.  To determine whether the harassment affected a term, condition, or privilege of employment, courts must "consider the totality of the circumstances, including the frequency and severity of the conduct, whether it is physically threatening or humiliating, and whether it unreasonably interferes with [the plaintiff's] job performance."  *Sellers v. Deere & Co.*, 791 F.3d 938, 945 (8th Cir. 2015) (internal quotation omitted).  Here, Plaintiff alleges that he was "regularly mocked, harassed, and abused because of his disability" and that such abuse "took place over a radio system that could be heard by all employees."  (Doc. 16, ¶¶ 36–37).  Accepting as true the allegations that Plaintiff's co-workers and supervisor "regularly" mocked him in such a manner, the Court finds that such allegations are sufficient to establish that the harassment was severe enough to interfere with Plaintiff's job performance.  Finally, as to the fifth element, Plaintiff alleged that the harassment over the radio was heard by "top management," *id.* at ¶ 37, which plausibly establishes that Tyson knew or should have known of the harassment and failed to addressed it.

Tyson also argues that Plaintiff failed to allege that any of his harassers were supervisors.  An individual qualifies as a supervisor if he or she is authorized to undertake tangible employment decisions affecting the employee.  *Vance v. Ball State Univ.*, 570 U.S. 421, 428–31 (2013).  Here, Plaintiff alleges that Mr. Ackerman had supervisory authority over him, in part because he prohibited Plaintiff from checking his blood sugar levels during work.  (Doc. 16, ¶ 31).  Thus, to the extent Plaintiff's hostile work environment claim is based upon the actions of Mr. Ackerman, the Court finds that he has sufficiently alleged that Mr. Ackerman was a supervisor.

### iii.  The Failure to Accommodate Claim

Though Tyson does not specifically attack this claim, it does seek judgment on the pleadings in general, so the Court finds that Plaintiff has also alleged facts sufficient to state a claim for failure to accommodate under the ADA.  To support a failure to accommodate claim, Plaintiff first "must establish both a prima facie case of discrimination based on [his] disability and a failure to accommodate it."  *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 905 (8th Cir. 2015).  "To determine whether an accommodation for an employee is necessary, and if so, what that accommodation might be, it is necessary for the employer and employee to engage in an 'interactive process.'"  *Id.* at 906 (quoting *Peyton v. Fred's Stores of Ark., Inc.*, 561 F.3d 900, 902 (8th Cir. 2009)).  "This interactive, accommodation-seeking process must be initiated by the disabled employee, who must alert his employer to the need for an accommodation and provide relevant details of his disability." *Id.* (citing *EEOC v. Convergys Customer Mgmt. Grp.*, 491 F.3d 790, 795 (8th Cir. 2007)).  To show that an employer did not engage in an interactive process, the employee must prove:

    (1)    the employer knew about the employee's disability;

    (2)    the employee requested accommodations or assistance for his or her disability;

    (3)    the employer did not make a good faith effort to assist the employee in seeking accommodations; and

    (4)    the employee could have been reasonably accommodated but for the employer's lack of good faith.

*Id.* (citing *Peyton*, 561 F.3d at 902).

As discussed above, Plaintiff has sufficiently alleged a prima facie case of discrimination based upon his disability, and the Court concludes that he has also

sufficiently alleged that Tyson did not accommodate his disability.  Plaintiff alleges that management at the factory was aware of his disability and that he sought an accommodation—time to check his blood sugar—from Mr. Ackerman, an employee with supervisory authority over Plaintiff.  Plaintiff also alleges that other employees were given unlimited smoke breaks, which the Court will construe as an allegation that Plaintiff's disability could have been reasonably accommodated by giving him similar breaks.  Accordingly, the Court will not dismiss Plaintiff's failure to accommodate claim.

### 3.  The FMLA Claims

Plaintiff makes various claims under the FMLA.  The FMLA entitles a qualifying employee to 12 work-weeks of leave during any 12–month period if the employee has "a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D); *see Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1005 (8th Cir. 2012).  "A claim under the FMLA cannot succeed unless the plaintiff can show that he gave his employer adequate and timely notice of his need for leave . . . ."  *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 991 (8th Cir. 2005).  The Eighth Circuit has recognized three types of claims arising under two subsections of the FMLA dealing with prohibited acts.  *See Pulczinski*, 691 F.3d at 1005; 29 U.S.C. § 2615(a)(1), (a)(2).  The three types of claims are:  (1) "entitlement" claims, or "interference" claims, arising under § 2615(a)(1), which occur when an employer takes action to avoid responsibilities under the FMLA such as refusing to authorize leave; (2) "retaliation" claims, arising under § 2615(a)(2), which occur when an employer takes an adverse action against an employee for opposing any practice made unlawful under the FMLA; and (3) "discrimination" claims, arising under § 2615(a)(1),

which occur when an employer takes adverse action against an employee because the employee exercises rights to which he is entitled under the FMLA.  *Brown v. City of Jacksonville,* 711 F.3d 883, 890–91 (8th Cir. 2013) (citing *Pulczinski*, 691 F.3d at 1005–06; *Lovland v. Emp'rs Mut. Cas. Co.*, 674 F.3d 806, 811 (8th Cir. 2012)).  Although the Amended Complaint is styled as if it only brings one claim, the Court construes both an interference and a discrimination claim.

Tyson argues that the Court should dismiss Plaintiff's FMLA interference claim because he did not allege that he gave Tyson notice of his need for FMLA leave.  This is a close question, but given the liberal notice pleading standard, the Court concludes that Plaintiff has alleged sufficiently that he gave Tyson notice of his need for FMLA leave. "Adequate notice requires enough information to put the employer on notice that the employee may need FMLA leave."  *Id.* (internal quotation omitted).  Here, Plaintiff alleges that he was entitled to take FMLA leave to attend physical therapy, but Tyson denied him such leave.[4]  His allegations regarding notice to Tyson include:

- "Jacob Coffelt also prohibited Plaintiff from going to physical therapy."

- "Jodie Ackerman did, too."

- "When Plaintiff raised the issue of his FMLA rights, Jacob Coffelt stated he didn't care what the FMLA said."

---

[4]  The Court assumes Plaintiff's FMLA interference claim is unrelated to his request for light-duty work, as the FMLA does not guarantee employees light-duty work.  *See Lee v. Lexicon, Inc.*, 2013 WL 1445656, at *2 (E.D. Ark. Apr. 9, 2013) (noting that light-duty and FMLA leave are distinct rights); *see also James v. Hyatt Regency Chi.*, 707 F.3d 775, 781 (7th Cir. 2013) ("There is no such thing as FMLA light duty." (internal quotation marks and alterations omitted)).

(Doc. 16, ¶¶ 99–100, 102).  These allegations are not a model of clarity but reading them in context indicates that Plaintiff told his supervisor, Mr. Coffelt, that he needed FMLA leave to attend physical therapy, and that request was denied.  These allegations are sufficient to establish a plausible claim for FMLA interference.

Tyson also argues that Plaintiff has failed to state a claim for FMLA discrimination. The Court disagrees.  To establish a prima facie case of FMLA discrimination, the Plaintiff must plead facts sufficient to make plausible that: (1) he engaged in activity protected under the Act; (2) he suffered an adverse employment action by the Tyson; and (3) a causal connection existed between the employee's protected activity and the adverse employment action.  *Lovelace v. Wash. Univ. Sch. of Med.*, 931 F.3d 698, 705 (8th Cir. 2019).  Here, Plaintiff alleges that, due to his sports-related injury, he received FMLA leave, which satisfies the first element.  As for the second element, he alleges that he was "repeatedly subjected to mockery and adverse treatment by management and his coworkers because of a medical condition and in retaliation for taking FMLA leave." (Doc. 16, ¶ 105).  This mockery "typically took place over radio communications which [were] broadcasted to all employees."  *Id.*  As a result of this mockery, Plaintiff alleges that he was constructively discharged.  Much like the mockery he allegedly received based upon his disability, the Court finds that these allegations plausibly establish that Plaintiff was constructively discharged as a direct result of his use of FMLA leave.

#### 4.  The ACRA Claims

Pursuant to the ACRA, Plaintiff alleges that Tyson discriminated against him on the basis of race, religion, national identity, and disability.[5]  Tyson argues that Plaintiff has failed to allege these claims with the requisite level of particularity.  For the reasons set forth below, the Court **DISMISSES WITHOUT PREJUDICE** the claims of discrimination based upon race and national identity.  The other two claims are adequately pleaded.

First, Plaintiff's claim of disability discrimination under the ACRA survives for the same reasons his ADA disability discrimination survives.  *See Schaffhauser*, 794 F.3d at 906 (noting that courts using the same standard to evaluate disability claims brought under the ADA and the ACRA).

Second, as for his claim of religious discrimination,[6] the Court concludes that he has sufficiently alleged that claim under the ACRA.  To establish a claim for religious discrimination on the basis of disparate treatment Plaintiff must plead facts to make plausible: (1) he is a member of a protected class because of his religious beliefs; (2) he met Tyson's legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination.  *Shirrell v. St. Francis Med. Ctr.*, 793 F.3d 881, 887 (8th Cir. 2015); *see Davis v. KARK-TV, Inc.*, 421 F.3d 699,

---

[5]  Plaintiff alleges a Title VII claim for sex discrimination but does not allege a claim for sex discrimination under the ACRA.

[6]  There is no exhaustion requirement under the ACRA.  *See Moses v. Dassault Falcon Jet-Wilmington Corp*, 894 F.3d 911, 921 (8th Cir. 2018) (noting that failure to exhaust a federal claim does not affect an ACRA claim).

703 (8th Cir. 2005) (holding that Title VII disparate treatment claims and ACRA claims are analyzed in the same manner).

Plaintiff alleges he is a Messianic Jew and is therefore a member of a protected class.  *See Vetter v. Farmland Indus., Inc.*, 884 F. Supp. 1287, 1303 (N.D. Iowa 1995) (holding that plaintiff's Jewish religion was a protected class under Title VII).  As analyzed above, Plaintiff plausibly alleges that he met Tyson's expectations and was constructively discharged.  Finally, in light of Plaintiff's harassment by Mr. Grimmit, an alleged supervisory employee, *see* Doc. 16, ¶¶ 46–57, Plaintiff has plausibly alleged that the circumstances surrounding his constructive discharge give rise to an inference of discrimination.  Therefore, Plaintiff has plausibly pleaded a claim for religious discrimination on the basis of disparate treatment under the ACRA.

Third, the Court must dismiss Plaintiff's claim for racial discrimination under the ACRA.  In the light of the lack of controlling precedent, the Court declines to hold that Jewish people are a race as that term is defined under Title VII or the ACRA.  Though many courts have found that Jewish ethnicity may qualify alternatively as a race or national identity under 42 U.S.C. § 1981, § 1982, and Title VI, *see Bonadona v. Louisiana Coll.*, 2019 WL 4073247, at *2 (W.D. La. Aug. 28, 2019); *T.E. v. Pine Bush Cent. Sch. Dist.*, 58 F. Supp. 3d 332, 355 (S.D.N.Y. 2014), this Court has found no authority that the same holds true for Title VII claims.  *See Bonadona*, 2019 WL 4073247, at *3 (finding that Jewish ethnicity qualifies as a race under § 1981 but not Title VII); *Lapine v. Edward Marshall Boehm, Inc.*, 1990 WL 43572, at *5 (N.D. Ill. Mar. 28, 1990).  Therefore, because the ACRA is interpreted similarly to Title VII, the Court concludes that Plaintiff's racial discrimination claim under the ACRA must be **DISMISSED WITHOUT PREJUDICE**.

Fourth, and finally, the Court must dismiss Plaintiff's claim of national origin discrimination, as he appears to abandon it in his Amended Complaint.  Specifically, he concedes that the harassment he suffered "was anti-Semitic, not necessarily anti-Israeli." (Doc. 16, p. 2).  Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's claim for national identity discrimination under the ACRA.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Tyson's Motion for Judgment on the Pleadings (Doc. 17) is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiff's Title VII claims for religious and sex discrimination are **DISMISSED WITH PREJUDICE** for failure to exhaust administrative remedies, and Plaintiff's ACRA claims for race and national origin discrimination are **DISMISSED WITHOUT PREJUDICE**.  Plaintiff's other claims remain for discovery.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to Supplement Response (Doc. 28) is **DENIED**.

**IT IS SO ORDERED** on this 9th day of February, 2021.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE